# PECHMAN LAW GROUP PLLC
A T T O R N E Y S   A T   L A W

**488 MADISON AVENUE**
**NEW YORK, NEW YORK 10022**
**(212) 583-9500**
**WWW.PECHMANLAW.COM**

February 21, 2024

**VIA ECF**

Honorable Sarah L. Cave
United States Magistrate Judge
United States District Court
Southern District of New York
500 Pearl Street, Room 1670
New York, New York 10007

Re: *Sanchez v. Cosan Construction Corp.*, 21 Civ. 6744 (SLC)
(Joint Letter-Motion for Settlement Approval under *Cheeks*)

Dear Judge Cave:

We represent the Plaintiffs[1] in this Action. Together with Defendants' attorneys, Cole Schotz P.C., the Parties jointly submit this letter-motion to request approval of their Settlement as embodied in their Agreement (attached as Exhibit A to the Cuadra Declaration) and dismissal with prejudice of this Action.

## FACTUAL AND PROCEDURAL HISTORY

Cosan is a construction company that specializes in concrete, masonry, cement flooring, and stucco work. Its owners are Defendants Terence Ferguson and Aaron King. King and Ferguson also own Defendants AMCG and Trade Solutions, which are entities that have historically worked primarily with Cosan at various points on its construction worksites. As part of their business, Cosan, AMCG, and Trade Solutions (the "Corporate Defendants") employ construction workers. The Corporate Defendants work on several construction worksites throughout New York City, Westchester, and Long Island.

Plaintiffs worked as construction workers for Defendants at different points since the end of 2015 (the "Liability Period"). Plaintiffs' primary work duties included laying bricks and floors, mixing cement, installing tiles, moving and cutting construction materials, cleaning, performing flagging construction duties, and driving and unloading trucks. On at least some workweeks throughout their respective employment periods, Plaintiffs claim that they worked more than forty hours on the Corporate Defendants' construction worksites. Plaintiffs claim that Defendants did not furnish them with wage notices upon hiring.

---

[1] Unless otherwise stated, all capitalized terms used in this Letter-Motion are defined in the accompanying Declaration of Gianfranco J. Cuadra (the "Cuadra Decl.") and in the Agreement.

Throughout the Liability Period, the Corporate Defendants have paid Plaintiffs on an hourly basis using one or more paychecks per pay period. Plaintiffs claim that King or Ferguson would tell them their regular hourly wage rates, but not their overtime wages rates, at the time of hiring and whenever their wage rates changed. According to Plaintiffs, Defendants paid their wages using one of three methods throughout the Liability Period, which are described in more detail below. Plaintiffs claim that none of these payment methods properly compensated them for their overtime hours worked, and that Defendants made all decisions concerning the wage payments of construction workers on their own, without input from counsel or any other professionals.

Upon the foregoing, on August 10, 2021, Named Plaintiffs Lauro Sanchez and Juan Eusebio Santiago filed a Complaint against Cosan, Ferguson, King, and AMCG claiming that they and all similarly situated construction workers are entitled to recover their unpaid overtime wages, liquidated damages, statutory damages under the Wage Theft Prevention Act ("WTPA"), pre- and post-judgment interest, and attorneys' fees and costs under the FLSA, NYLL, and WTPA (collectively, the "Claims"). Cuadra Decl. ¶¶ 9–10. On November 22, 2021, Defendants Cosan, AMCG, Ferguson, and King filed an Answer generally denying the allegations in the Complaint. *Id.* ¶ 10.

On February 8, 2022, the Parties stipulated to the conditional certification of a collective action under the FLSA. *Id.* ¶ 13. Defendants produced a list reflecting the names, dates of employment, and last known contact information of potential collective action participants. *Id.* On June 13, 2022, the three Named Plaintiffs filed an Amended Complaint, in which they reasserted the Claims but added Trade Solutions as a Defendant. *Id.* ¶¶ 16–17. Defendants filed an Answer to the Amended Complaint on July 1, 2022, in which they generally denied all allegations against them. *Id.* ¶ 18.

Between July 1 and November 9, 2022, thirty-four construction workers joined the Action as opt-in plaintiffs. *Id.* ¶ 19. Throughout this period, the Parties exchanged thousands of pages of records in discovery. *Id.* ¶ 20. Plaintiffs replied to one set of document requests and interrogatories, and Defendants replied to two sets of interrogatories, one set of document requests, and one set of requests for admissions. *Id.* ¶ 22. Plaintiffs took the depositions of all five Defendants and one of their office employees. *Id.* ¶ 21. Defendants took the depositions of Named Plaintiffs Lauro Sanchez and Gustavo Mendez. *Id.* On April 28, 2023, Plaintiffs filed a motion for class action certification under Rule 23 of the Federal Rules of Civil Procedure, which Defendants did not oppose, and which remains undecided and held in abeyance. *Id.* ¶ 23.

To attempt to preserve resources, the Parties agreed to attend a settlement conference before Magistrate Judge Sarah L. Cave. *Id.* ¶ 24. To do so, the Parties agreed that Defendants would produce payroll and time records for all potential class members. *Id.* From August to September 2023, Defendants produced tens of thousands of pages of records for all potential class members. *Id.* ¶ 25. Plaintiffs' counsel used these records to calculate damages for all potential class members. *Id.* The Parties attended a settlement conference on October 10, 2023. *Id.* ¶ 26. They did not reach a settlement, but they agreed to exchange certain additional confidential business records concerning Defendants' finances in furtherance of a continued settlement conference. *Id.*

On November 8, 2023, the Court scheduled a second settlement conference for December 11, 2023. *Id.* ¶ 27. The Parties again could not reach a resolution. *Id.* ¶ 28. Instead, the Court proposed a settlement. *Id.* Following several discussions with the Court throughout the rest of December, the Parties reached a settlement in principle in January 2024. *Id.* ¶¶ 29–30. Before submitting their settlement papers to the Court, they stipulated to the removal of three individuals from the Action and the addition of eight other construction workers as Plaintiffs. *Id.* ¶ 31. The eight additional plaintiffs filed consent to sue forms on February 6, 2024. *Id.* ¶ 32. The Parties also submitted a proposed order referring this Action to Magistrate Judge Cave for all purposes, which the Court so-ordered on February 14, 2024. *Id.* ¶ 33.

Pursuant to the Court's Order dated January 3, 2024 (ECF No. 120), and *Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199 (2d Cir. 2015), the Parties jointly request that the Court approve their Settlement as a fair and reasonable resolution and dismiss the Action with prejudice but retain jurisdiction for purposes of enforcing the Agreement.

## THE PARTIES' DISPUTES AND PLAINTIFFS' ALLEGED HIGHEST POSSIBLE DAMAGES

Plaintiffs' unpaid overtime wages claim rests on three allegations. First, they argue that Defendants generally paid them on a "straight time" basis from the end of 2015 through 2017. For example, Named Plaintiff Juan Eusebio Santiago claims that Defendants paid him $31 per hour for his forty-eight hours worked for the week ending August 16, 2017. Plaintiffs claim that this method of compensation violated the NYLL, which required Defendants to pay them one and one-half times their regular wage rates per hour worked over forty per workweek. *See* 12 N.Y.C.R.R. § 142–2.2 (2016) ("An employer shall pay an employee for overtime at a wage rate of one and one-half times the employee's regular rate in the manner and methods provided in and subject to the exemptions of section 7 and 13 of 29 U.S.C. 201 *et seq.*, the . . . [FLSA], as amended.").

Plaintiffs next argue that, at different points in the Liability Period, Defendants paid them at two or more regular hourly wage rates without a blended overtime wage rate. For example, opt-in Plaintiff Victorino Garcia claims that Defendants paid his wages due for the week ending November 29, 2017, using two checks from Cosan, one for twenty-four hours at $15 per hour and a second for 18.5 hours at $25 per hour. Plaintiffs claim that this pay method violated the FLSA and NYLL because when an employee is paid at two or more non-overtime rates, "his regular rate for that week is the weighted average of such rates," equal to all compensation at all rates "divided by the total number of hours worked at all jobs." 29 C.F.R. § 778.115; *see also* 12 N.Y.C.R.R. § 142–2.2. In such workweeks, Plaintiffs claim they are owed an overtime premium of half the "weighted average" for hours worked over forty. 29 C.F.R. § 778.107; 12 N.Y.C.R.R. § 142–2.2.

Last, Plaintiffs argue that since early 2018, the Corporate Defendants have paid their wages using multiple checks per pay period, with only one check from Cosan subject to payroll deductions and withholdings. Plaintiffs claim that although the check from Cosan reflected regular and overtime wage rates, it did not reflect their agreed-upon regular wage rates. The sum of the net wages in the two paychecks per period brought

the employee's wages up to his agreed-upon regular wage rate. For example, for the workweek ending March 28, 2018, Named Plaintiff Juan Eusebio Santiago worked forty-four hours. He received a paycheck from Cosan with a paystub reflecting $20 per regular hour and $30 per overtime hour, equal to total gross wages of $920 and total net wages of $809.05. For this same workweek, he received a second paycheck from Cosan reflecting seventeen hours and fifty-four minutes paid at $31 per hour, totaling $554.95, not subject to withholdings. Combined, his total net wages for this workweek are $1,364, which divided by his forty-four hours worked equals $31 per hour.

Plaintiffs claim that this method of compensation violated both the FLSA and NYLL because the wages that Defendants paid them under the second paycheck per pay period are not excluded from the "regular rate." *See, e.g.*, 29 U.S.C. § 207(e)(1)–(8); *Newman v. Advanced Tech. Innovation Corp.*, 749 F.3d 33, 36 (1st Cir. 2014) (noting statutory exemptions under section 207(e) "are to be interpreted narrowly against the employer, and the employer bears the burden of showing that an exception applies"); *Crespo v. County of Monroe*, No. 10–CV–6590L, 2015 WL 2406112, at *10 (W.D.N.Y. May 20, 2015) ("[I]t is the employer's burden to show that it is entitled to an FLSA exemption, and all such exemptions are construed narrowly."). By affecting the regular rate (*see, e.g.*, 29 C.F.R. § 778.109), the wages paid under the second paycheck allegedly also affected the overtime wage rates due to Plaintiffs. In the example above, Named Plaintiff Juan Eusebio Santiago claims he is owed an additional $25.24 in unpaid overtime wages for the week ending March 28, 2018. This is equal to his pay of $554.95 under the second paycheck divided by his forty-four hours worked, or $12.62. That number divided by two yields $6.31, which multiplied by four overtime hours worked equals $25.24.

Plaintiffs claim they are entitled to recover statutory damages under the WTPA because Defendants failed to furnish them with wage notices at the time of hiring and with accurate weekly wage statements. *See* N.Y. Lab. Law §§ 195(1), 195(3), 198(1–b), 198(1–d). In support of their claim, Plaintiffs allege that Defendants' violations of the WTPA were directly intertwined with their failure to pay Plaintiffs' wages due. Plaintiffs claim that before 2018, the wage statements omitted, and therefore failed to pay, overtime wages. After 2018, Plaintiffs allege Defendants purposely used two paychecks to avoid reflecting Plaintiffs' true regular and overtime wage rates, which resulted in the underpayment at issue. Finally, according to Plaintiffs, Defendants chose not to furnish wage notices to avoid informing Plaintiffs, almost all of whom are immigrant workers who are unaware of applicable laws, of their entitlement to overtime wages.

Plaintiffs claim they can recover liquidated damages under both the FLSA and NYLL. *See, e.g.*, 29 U.S.C. § 216(b); N.Y. Lab. Law § 198(1–a). Liquidated damages are often awarded unless the employer proves good faith and objective reasonableness for its violations of the FLSA and NYLL. *See, e.g., Elghourab v. Vista JFK, LLC*, No. 19-2834-cv, 2020 WL 3526374, at *2–3 (2d Cir. 2020); *see also Herman v. RSR Sec. Servs. Ltd.*, 172 F.3d 132, 142 (2d Cir. 1999) ("The employer bears the burden of proving good faith and reasonableness, but the burden is a difficult one, with double damages being the norm and single damages the exception.").

Plaintiffs also claim that they are entitled to recover pre-judgment interest at the rate of 9% per annum under the NYLL on all principal wages awarded. *See, e.g.*, *Pineda v. Frisolino, Inc.*, No. 15 Civ. 3774 (GBD), 2017 WL 3835882, at *13 (S.D.N.Y. Aug. 29, 2017).

Based on the foregoing disputed facts and on the large amount of records exchanged in discovery, Plaintiffs' counsel, Pechman Law Group PLLC ("PLG"), calculated damages for the Plaintiffs in the case as of July 2023.[2] Based on averages derived from Plaintiffs' damages calculations, PLG also calculated an average amount due in wages per week in each calendar year in the Liability Period, which it used to calculate class-wide damages for settlement purposes. Using these averages, PLG calculates that, combined, Plaintiffs' highest possible damages are:

| Category of Damages | Dollar Total |
|---|---|
| Unpaid Overtime Wages | $364,596.55 |
| NYLL Liquidated Damages | $364,596.55 |
| NYLL Pre-Judgment Interest | $136,311.13 |
| WTPA Wage Notices (NYLL § 195(1)) | $246,400 |
| WTPA Wage Statements (NYLL § 193(3)) | $250,000 |
| TOTAL | $1,361,904.22 |

Defendants generally deny all of Plaintiffs' substantive allegations and damages calculations. In short, while Defendants acknowledge that the Corporate Defendants typically paid their laborers through one or more entities each pay period, Plaintiffs were ultimately paid in full for all hours worked, including overtime hours. If any individual Plaintiff was not compensated in full for a particular week's work, Defendants submit that this was an exception, and not the rule. Accordingly, Defendants contend that Plaintiffs' calculation of unpaid overtime wages is grossly overstated, which correspondingly causes Plaintiffs' liquidated damages and pre-judgment interest calculations to be similarly inflated (to the extent Plaintiffs would be awarded such additional damages in any amount). Finally with respect to Plaintiffs' claims to statutory damages under NYLL § 195(1) or § 195(3), Defendants once again dispute Plaintiffs' entitlement to any such additional relief as a result of their failure to allege independent damages or a specific informational injury arising out of the Corporate Defendants' alleged failure to provide wage notices or wage statements. *See, e.g.*, *Montalvo v. Paul Bar & Rest. Corp.*, No. 22 Civ. 1423 (JLR) (SN), 2023 WL 6519717, at *7 (S.D.N.Y. Aug. 11, 2023).

### THE SETTLEMENT IS FAIR AND REASONABLE

Following two unsuccessful settlement conferences and various conference calls with the Court, this Court recommended that the Parties settle their disputes, inclusive of attorneys' fees and costs, for $460,000. In early January 2024, the Parties accepted the recommendation subject to some modifications. The Court should approve the Parties' Settlement as embodied in the Agreement as fair and reasonable under *Cheeks* and the factors in *Wolinsky v. Scholastic Inc.*, 900 F. Supp. 2d 332, 335 (S.D.N.Y. 2012).

---

[2] As noted, the Parties stipulated to the removal and addition of several Plaintiffs. Cuadra Decl. ¶ 31. PLG calculated damages for only those individuals who were in the Action as of July 2023.

*First,* the Settlement is fair and reasonable considering Plaintiffs' potential range of recovery. Although Plaintiffs could recover more money if they were fully successful through all motions, trial, and appeals in this case, the Settlement Amount (*i.e.*, $460,000) represents approximately 1.26 times Plaintiffs' highest possible recovery for unpaid overtime wages. After deducting attorneys' fees and costs and service awards requested, Plaintiffs will share a fund of $287,627.50, equal to 78.79% of their highest possible unpaid overtime wages owed and approximately 21.12% of their highest possible total damages claimed, which represent percentage ranges that courts "routinely" approve. *See, e.g., Woods v. Fitzcon Constr./Ren Corp.*, No. 20 Civ. 8088 (ALC)(SLC), 2022 WL 17655576, at *3 (S.D.N.Y. Nov. 14, 2022) (approving settlement and noting courts accept settlement percentages between 9.4% and 26% of plaintiffs' highest estimated recovery); *Santos v. YMY Mgmt. Corp.*, No. 20 Civ. 1992 (JPC), 2021 WL 431451, at *1 (S.D.N.Y. Feb. 8, 2021) (approving settlement equal to 18% of plaintiff's highest damages and noting courts "routinely" accept settlements ranging from 12.5% to 20% of highest alleged damages).

*Second*, the Parties settled this matter in large part to avoid costly litigation. The Parties have completed non-class discovery. However, there is a pending class action motion, which remains in abeyance. *See* Cuadra Decl. ¶ 23. If this case continues and the Court grants the motion, even in part, Plaintiffs will have to incur significant expenses disseminating notices to hundreds of individuals. After, the Parties would have to complete class discovery, which will include additional depositions. The Parties would then engage in protracted summary judgment motion practice, and Defendants may move to decertify the class and/or FLSA collective action. After, for any claims remaining, the Parties would potentially proceed to trial, followed by potential appeals. Proceeding with the Action would likely consume most of the resources used to settle it.

*Third*, there are significant risks to both Parties should the Action continue. Although Plaintiffs believe that they will ultimately succeed in this case, they recognize that Defendants raise defenses and allegations that, if accepted, could reduce or perhaps in part eliminate their recovery or frustrate Plaintiffs' collection of a judgment amount. *See, e.g., Cortes v. New Creators, Inc.*, No. 15 Civ. 5680 (PAE), 2016 WL 3455383, at *4 (S.D.N.Y. June 20, 2016) ("In light of defendants' precarious financial condition . . . there is a substantial risk that any judgment plaintiff[] might obtain at trial would prove uncollectable."). In these circumstances, "[c]ase law recognizes that potential difficulty in collecting damages militates in favor of finding a settlement reasonable." *Lliguichuzhca v. Cinema 60, LLC*, 948 F. Supp. 2d 362, 365 (S.D.N.Y. 2013).

*Fourth*, the Settlement here is the product of arm's length negotiations between experienced counsel. The Parties have been litigating this Action for over two years, during which time they have completed non-class discovery and a Rule 23 motion, attended two full settlement conferences, and ultimately agreed to settle this case only after receiving the Court's proposal. *See, e.g., Woods*, 2022 WL 17655576, at *4 (approving settlement after "lengthy negotiations between the parties over the course of two years, including" two "settlement conferences" with the court). Even after accepting the Court's proposal, the Parties continued to negotiate settlement terms at arm's length. *See* Ex. A. Against this backdrop, nothing here suggests fraud or collusion that would warrant rejecting the proposed Settlement.

The terms of the Agreement are otherwise consistent with *Cheeks* and its progeny. The release in the Agreement is limited to the Claims, meaning just the four claims in the Amended Complaint. *See* Ex. A § 2. There is no confidentiality, non-disparagement, or no re-employment provision. *See generally id.* To protect Plaintiffs against a potential default, the Parties agreed to confessions of judgment that all Defendants executed. *See* Ex. 2. To further protect Plaintiffs against a potential default, the Parties jointly request that the Court retain jurisdiction over this Action for purposes of enforcement. *See* Ex. A §§ 1(e)(i), 3(a). The Parties jointly request that the Court adopt all terms of the Agreement.

## ATTORNEYS' FEES AND SERVICE AWARDS REQUESTED ARE REASONABLE

Pursuant to the retainer agreements between Plaintiffs and counsel, PLG's fees are 33.33% of the amount recovered. *See* Exs. B–C § 1; *In re Lawrence*, 24 N.Y.3d 320, 339 (2014) ("Absent incompetence, deception or overreaching, contingent fee agreements that are not void at the time of inception should be enforced as written."). However, PLG requests only $151,849.48, or 31.69%, of the Settlement Amount as fees after reimbursement of $6,058.75 in costs that it incurred while prosecuting this action. Cuadra Decl. ¶¶ 52–54.[3]

"A contingency fee is presumptively valid where 'the proposed fee amount is exactly one-third of the net settlement amount.'" *See Angamarca v. Hud-Moe LLC*, No. 18-CV-1334 (RA), 2018 WL 6618412, at *1 (S.D.N.Y. Dec. 17, 2018) (quoting *Yunjian Lin v. Grand Sichuan 74 St Inc.*, No. 15-CV-2950 (RA), 2018 WL 3222519, at *5 (S.D.N.Y. July 2, 2018). Furthermore, "courts in this Circuit have routinely found an award representing one third of the settlement amount to be reasonable." *Yong Yuan Wang v. Mandarin Glen Cove, Inc.*, No. 18-CV-03266 (DLI) (CLP), 2019 WL 5695910, at *2 (E.D.N.Y. Sept. 30, 2019) (citing *Romero v. Westbury Jeep Chrysler Dodge, Inc.*, No. 15-cv-4145 (ADS) (SIL), 2016 WL 1369389, at *2 (E.D.N.Y. Apr. 6, 2016)); *see also Calle v. Elite Specialty Coatings Plus, Inc.*, No. 13-CV-6126 (NGG) (VMS)), 2014 WL 6621081, at *3 (E.D.N.Y. Nov. 21, 2014) ("A one-third contingency fee is a commonly accepted fee in this Circuit.") (collecting cases). A third of the settlement amount is "a percentage that courts in this district have generally deemed reasonable." *Woods*, 2022 WL 17655576, at *5.

The fees of $151,849.48 requested here are lower than PLG's fees billed to date of $380,065, as reflected in PLG's contemporaneous billing records attached to the Cuadra Declaration as Exhibit D. *See* Cuadra Decl. ¶¶ 53–54. The lodestar (*i.e.*, almost 40%) is based on the hourly fees that PLG actually charges hourly-paying clients for work that its attorneys perform. *See id.* ¶¶ 35–51, 55. The fees and costs requested are fair and reasonable as being less than the lodestar (*see id.* ¶ 57), as being consistent with the terms of Plaintiffs' retainer agreements with PLG (Exs. B–C § 1; *Chun Lan Guan v. Long Island Business Institute*, No. 15-CV-0225 (CBA)(VMS), 2020 WL 1289517, at *4 (E.D.N.Y. Mar. 18, 2020)), and as amounting to a fair and reasonable payment in light of the "considerable risk" that PLG undertakes by representing employees in wage-and-hour cases on a contingency fee basis. *See, e.g.*, *Sanchez v. JMP Ventures, L.L.C.*, No. 13 Civ. 7264 (GWG), 2015 WL 539506, at *6 (S.D.N.Y. Feb. 10, 2015); *see also* Exs. B–C. Furthermore, Plaintiffs accept the fees in the Agreement. See Ex. A § 9(b) ("Each Plaintiff represents

---

[3] All invoices for costs incurred are attached as Exhibit E to the Cuadra Declaration. *See id.* ¶ 52.

and warrants that he has reviewed this Agreement in his native language in full with his attorney before executing it, understands it, and agrees to its terms, *including but not limited to the distribution of the Settlement Amount* as fair and reasonable in light of the risks and expenses of continued litigation." (emphasis added)). Accordingly, for these reasons and those set forth in the Cuadra Declaration (*see* Cuadra Decl. ¶¶ 35–57), PLG requests that the Court approve the attorneys' fee and costs requested as fair and reasonable.

PLG further requests that the Court approve a $5,000 service award for each Named Plaintiff. *See* Ex. A § 1(a)(i). Service awards "are particularly appropriate in the employment context . . . [where] the plaintiff is often a former or current employee of the defendant, and thus . . . he has, for the benefit of the class as a whole, undertaken the risks of adverse actions by the employer or co-workers." *Frank v. Eastman Kodak Co.*, 228 F.R.D. 174, 187 (W.D.N.Y. 2005). The Named Plaintiffs have been instrumental in spearheading this Action and reaching a resolution on behalf of all other Plaintiffs. They have spent numerous hours working with PLG on pleadings, providing records needed for the Action, attending and sitting for depositions, helping with damages calculations, ensuring that other construction workers were aware of and joined this Action, and attending two settlement conferences. *See* Cuadra Decl. ¶¶ 58–62.

For their contributions and the risks they undertook as named plaintiffs, the Court should approve a service award of $5,000 to each of the three Named Plaintiffs. In total (*i.e.*, $15,000), the combined service awards amount to 3.26% of the Settlement Amount. Courts routinely approve the amount requested here in service awards, both with respect to the individual amounts requested (*i.e.*, $5,000 per Plaintiff) and as a percentage of the full settlement amount (*i.e.*, 3.26%). *See, e.g.*, *Karic v. Major Automotive Cos.*, No. 09 Civ. 5708 (CLP), 2016 WL 1745037, at *7–8 (E.D.N.Y. April 27, 2016) (approving $20,000 settlement awards to seven class representatives, equal to 2.55% of settlement); *Gonqueh v. Leros Point to Point, Inc.*, No. 14 Civ. 5883 (GWG), 2016 WL 791295, at *3 (S.D.N.Y. Feb. 26, 2016) (approving $30,000 in awards to three plaintiffs, equal to 4.14% of settlement); *Morris v. Affinity Health Plan, Inc.*, 859 F. Supp. 2d 611, 624 (S.D.N.Y. 2012) (approving $7,500 awards); *Clark v. Ecolab Inc.*, No. 07 Civ. 8623 (PAC), 2010 WL 1948198, at *9 (S.D.N.Y. May 11, 2010) (approving $10,000 awards)

We thank the Court for its time and consideration of this matter and are available to address the Court's questions if necessary.

Respectfully submitted,

Gianfranco J. Cuadra

cc: Defendants' Counsel (via ECF)

Enclosures